JUDGE CAPRONI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JihShyr Yih

# 18 CV 3844

Write the full name of each plaintiff.

\_\_\_\_\_CV_____
(Include case number if one has been assigned)

-against-

Taiwan Semiconductor Manufacturing Company

Do you want a jury trial?

☒ Yes    ☐ No

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

## EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 3/24/17

## I.   PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

JihShyr                                                    Yih
_____
First Name                    Middle Initial        Last Name

2474 Trelawn Street
_____
Street Address

Westchester, Yorktown Heights        New York              10598
_____
County, City                              State               Zip Code

914-440-3478                         jyih@yahoo.com
_____
Telephone Number                    Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:   **Taiwan Semiconductor Manufacturing Company**
_____
Name
8, Li-Hsin Rd. 6, Hsinchu Science Park, Hsinchu 300-78, Taiwan
_____
Address where defendant may be served

_____
County, City                         State             Zip Code

Defendant 2:   _____
Name

_____
Address where defendant may be served

_____
County, City                         State             Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                State            Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:
(home office)

Name
2474 Trelawn Street
_____
Address
Westchester, Yorktown Heights    New York       10598
_____
County, City                State            Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race:        _____

☐ color:       _____

☐ religion:    _____

☒ sex:         Marital Status and Family Status

☒ national origin:  Foreign Against United States

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: **1959**_____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

Page 4

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☒ did not hire me

☐ terminated my employment

☐ did not promote me

☐ did not accommodate my disability

☐ provided me with terms and conditions of employment different from those of similar employees

☒ retaliated against me

☐ harassed me or created a hostile work environment

☐ other (specify): _____

_____

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Please see facts in the next two pages: Pages 5A and 5B.

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## IV. STATEMENT OF CLAIM

### B. Facts

On Sept. 25, 2017, after passing an 80 minutes earlier round of interview with two Taiwan Semiconductor Manufacturing Company ("TSMC") supervisors, another internet video call was made to my house in New York, Dr. Stephen T. Tso, then TSMC Sr. Vice President Chief Information Officer, asked for my past IBM supervisors' names to validate my IBM career and the following personal questions: 1) Did you leave IBM voluntarily or involuntarily? 2) Did you get financial payment to leave IBM? 3) How many children do you have? 4) How old are your children? 5) What are your children doing now? 6) What future schools are your children going to attend? 7) What is your marital status? 8) Does your wife work? Afterwards, without any job qualifying questions, Dr. Tso walked out the video conference room abruptly not even saying goodbye. Flabbergasted, I complained about the questions and the harsh interrogating manners to the headhunter on the same day, but still supplied 11 references to TSMC as promised in two days. Eight days later, I was rejected on Oct. 3, 2017 with headhunter feedback that I was too senior to fit in. I immediately protested the excuse.

TSMC HR set up a call on Oct. 5, 2017 to hear my complaint. Afterwards, on Oct. 13 TSMC attorney emailed to explain the offending questions were asked out of concerns that I and my family would have problems adjusting, because I and my family have stayed in U.S. many (36) years. I found the new excuse not only discriminate against my age, family status, marital status, but also my national origin, as a person who has worked in American work/life culture too long to fit in.

TSMC attorney also threatened to sue me should I tell people about the interview experience.
On Oct. 16, 2017, TSMC announced Dr. Tso to retire, who is no longer a TSMC employee.

On Apr. 16, 2018, TSMC attorney confirmed that TSMC made no contacts to any of the professional references I provided. Therefore, I believe the rejection was solely based on my answers to the above menitoned discriminating questions and I was aslo retaliated for my protests.

Page 5A

Below is the Job Description I received on July 16, 2017, from Mr. Jun Huang, a headhunter from Lighthouse Global Resource, a company based in Singapore. Notice the missing job location requirement. Based on the fact that working from remote locations is a common pratice in the IT industry, I seeked employment in TSMC at my home office in New York.

Responsibility:
1. Perform quantitative analysis and statistical modeling on business needs
2. Co-work with counterparts to build analytics capability and platform

Requirements:
1. Practitioner of statistical analysis, predictive analytic and machine learning related study.
2. Lead projects with hands-on analysis and modelling, drawing from a breath of analytical methods to choose the right tool and right level of complexity appropriate to solving the business problem
3. Passion to challenge problems
4. Good communication skill
5. Team spirit
6. Key words: Business intelligence, quantitative analysis, statistical modelling, machine learning, business analytics

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

⊠ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?  Oct. 30, 2017

☐ No

Have you received a Notice of Right to Sue from the EEOC?

⊠ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?  Feb. 1, 2018

When did you receive the Notice?  Feb. 5, 2018

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

⊠ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

$1,800,000 for back pay, front pay, emotional distress, punitive damages, and legal fees and costs.

Page 6

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Apr. 30, 2018 | | _Jhshyr Yh_ |
| --- | --- | --- |
| Dated | | Plaintiff's Signature |
| JihShyr | | Yih |
| First Name | Middle Initial | Last Name |
| 2474 Trelawn Street | | |
| Street Address | | |
| Westchester, Yorktown Heights | New York | 10598 |
| County, City | State | Zip Code |
| 914-440-3478 | jyih@yahoo.com | |
| Telephone Number | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

February 1, 2018

**Jishyr Yih**
**2474 Trelawn Street**
**Yorktown Heights, NY 10598**

Re:   *Jihshyr Yih v. Taiwan Semiconductor Manufacturing Company*
      *EEOC Charge No.: 520-2018-01574*

Dear Mr. Yih:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

You allege that you were discriminated against by Taiwan Semiconductor Manufacturing Company on the basis of your age, in violation of the Age Discrimination in Employment Act. In accordance with our procedures, the Commission has evaluated your charge based upon the information you submitted, the EEOC has decided not to further pursue its investigation of your charge. This determination is final.

Enclosed is your Dismissal and Notice of Rights. If you wish to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice; otherwise your right to sue will be lost.

Please contact Federal Investigator Mabel Tso at (212) 336-3762 if you have any questions.

Sincerely,

_____ /MT
Kevin J. Berry
District Director
enc.

EEOC FORM 131 (11/09)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| ⌐ ¬<br><br>**TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY**<br>**8, Li-Hsin Road**<br>**6, Hsinchu Science Park**<br>**Hsinchu 300-78,**<br><br>L ⌐ | **Jihshyr Yih** |

| THIS PERSON *(check one or both)* |
|---|
| ☐ Claims To Be Aggrieved |
| ☒ X | Is Filing on Behalf of Other(s) |

| EEOC CHARGE NO. |
|---|
| **520-2018-00491** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

☐ Title VII of the Civil Rights Act (Title VII)  ☐ The Equal Pay Act (EPA)  ☐ The Americans with Disabilities Act (ADA)

☒ **X** The Age Discrimination in Employment Act (ADEA)  ☐ The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. ☒ **X** No action is required by you at this time.

2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.

3. ☐ Please provide by  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. ☐ Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by  to
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Mabel Tso,**<br>**Investigator** | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004**<br>**Fax: (212) 336-3625** |
|---|---|
| *EEOC Representative* | |
| *Telephone*  **(212) 336-3762** | |

Enclosure(s):  ☒ Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

☐ Race  ☐ Color  ☐ Sex  ☐ Religion  ☐ National Origin  ☒ Age  ☐ Disability  ☐ Retaliation  ☐ Genetic Information  ☐ Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **February 1, 2018** | **Kevin J. Berry,**<br>**District Director** | *Kevin J. Berry* |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  Jihshyr Yih
     2474 Trelawn Street
     Yorktown Heights, NY 10598

From:  New York District Office
       33 Whitehall Street
       5th Floor
       New York, NY 10004

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-00491 | Mabel Tso, Investigator | (212) 336-3762 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

February 1, 2018

Kevin J. Berry,
District Director

(Date Mailed)

Enclosures(s)

cc:

TAIWAN SEMICONDUCTOR MANUFACTURING
COMPANY
8, Li-Hsin Road
6, Hsinchu Science Park
Hsinchu 300-78,

# Complaint to the United States Equal Employment Opportunity Commission

My information:
    Name: Jihshyr (Simon) Yih
    Address: 2474 Trelawn Street, Yorktown Heights, NY 10598
    Telephone: 914-962-0282 (h)

I am filing a complaint against:
    Company: Taiwan Semiconductor Manufacturing Company
    Address: 8, Li-Hsin Rd. 6, Hsinchu Science Park
            Hsinchu 300-78
            Taiwan
    Telephone: 011-886-3-563-6688

Person who discriminated against me:
    Name: Stephen T. Tso
    Title: Sr. Vice President, Chief Information Officer

Date of discrimination: Sept. 25, 2017

**Basis of Discrimination**
I believe I was discriminated against
    1) my age (58),
    2) by forbidden practices of pre-employment inquiries
       (marital, spouse work, and familial statuses), and
    3) I was retaliated by intimidation.

Taiwan Semiconductor Manufacturing Company (TSMC) has more than 40,000 employees worldwide.

I am a U.S. citizen living in New York and was invited to apply to jobs in TSMC.

TSMC is an equal employment opportunity employer. TSMC is considered a U.S. employer, which operates in U.S., with stocks traded on New York Stock Exchange, and has U.S. citizens as officers and directors for the majority of the management and board.

I will not file the same or similar charge to a state or local fair employment agency due to state jurisdiction not applicable reason.

Person who will always know how to contact me:
    Mr. Arthur Yih
    6019 Rustling Oak Dr., Agoura Hills, CA 91301
    818-707-9243 (h)

1

## Description of discrimination and why I think it was discriminatory:

In the 4th round Skype video interview call, on Sept. 25, 2017 to my house in NY, TSMC Sr. VP, CIO Dr. Tso interrupted my talk on my job qualifying experience after two minutes and focused solely on employment validations and my family. Pointing to a folder of my case, Dr. Tso indicated that IBM protected my privacy about my previous employment with IBM, and proceeded to take on the following prying questions himself: 1) Did you leave IBM voluntarily or involuntarily? 2) Did you get financial payment to leave IBM? 3) How many children do you have? 4) How old are your children? 5) What are your children doing now? 6) What future schools are your children going to attend? 7) What is your marital status? 8) Does your wife work? TSMC HR Director Dr. Terance Chao and IT Sr. Director Mr. Thomas Chen were present.

Same day after the call, in a reply to headhunters' inquiries, I complained in email about Dr. Tso's discriminating questions and offensive, interrogating-like manners. Then, headhunter Ms. Tammy Lee called on Oct. 3, in the presence of my wife SheauHuey Suhng and daughter Alison Yih, to inform rejection due to "TSMC reorganization and being too senior to fit in, but TSMC may reconsider me in a few months." Immediately, I complained in an email with a web page titled: BEING "OVERQUALIFIED" MAY BE A THIN EXCUSE FOR AGE DISCRIMINATION. Alarmed, HR Director Dr. Chao requested a call with me on Oct. 5 to hear about the complaint. Finally, on Oct. 13, I received a letter from LEE and LI Attorneys-At-Law representing TSMC with three main statements: 1) explaining reasons for the rejection, 2) admitting discriminating questions were asked so that TSMC can help me join the company, and 3) to intimidate me with a lawsuit if I tell others about the interview. On Oct. 16, TSMC announced Dr. Tso to retire.

To cover up the original age discriminating rejection feedback via Ms. Lee, TSMC in its statement falsely blamed on my failure to provide 1) references and 2) job qualifying skills information for their evaluation. In fact, I provided three references beforehand and after request additional 11 former managers' names for them to talk to. Also, I have provided detailed insights of my relevant achievements, certified by IBM top most awards, in the 3rd round interview, which lasted 80 minutes, on Aug. 2, 2017, with TSMC managers Mr. Willie Chang and Ms. Claire Yin. The email feedback regarding the 3rd interview, via headhunter Mr. Jun Huang, described the reception as good and powerful to help more important TSMC operations. As a result, the position was moved from VP Dr. Irene Sun's Corporate Planning Organization to Sr. VP Dr. Tso's CTO department, logically through the assignment by their common managers, TSMC co-CEOs Dr. Mark Liu and Dr. C.C. Wei. However, in the following 4th interview, Dr. Tso was hostile to the assignment and resorted to using discriminatory questions and offensive manners to repel job application.

*Jhshyr Yih*  Oct 30, 2017

Jihshyr (Simon) Yih          Date of submission

## Attachments: pages 3 to 13, email correspondences as supporting documents

2

Re: Career Opportunity with TSMC

**Subject:** Re: Career Opportunity with TSMC
**From:** Jun Huang-LightHouse Global <jun.huang@lthouseglobal.com>
**Date:** 9/5/17 1:52 AM
**To:** "J. S. Yih" <jyih27@gmail.com>

Hi Dr.,

How are you doing!
As you mentioned, there was a huge big shot to me just yesterday, haha, not mean completing any case but just met up a key guy in Taiwan ICT industry and earn some experience from him. What a pleasure on me to meet up the outstanding person like you both are!
I am not sure if you ever heard Dr. LongSong Lin?

And, I think this should be a good news from TSMC on you, your skills, experience and knowledge in IT and computer science related truly caused a heated discussion within TSMC, and you also bring us up some credit in TSMC indirectly, they said that we are truly good at searching since they can not find anyone good like you by their own, haha, this is what I need to appreciate!

After their internal heated discussion on you, they'd also like to arrange a interview between you and the main in charge of IT department, but it will take another 2 weeks since this man is on biz trip abroad. Their main idea is all you own will be good and powerful to their IT department so that won't lose any chance could help the operation. I am now still checking on the specific scope of the new role they promote, will let you if any further information.

If like that, would you please kindly let me know your any idea on this new role?

cheers,
**Jun Huang   +886-975-892-572**
jun.huang@lthouseglobal.com
**Lighthouse Global Resource**
http://lighthouseglobal.com.sg

3

Re: Career Opportunity with TSMC

**Subject:** Re: Career Opportunity with TSMC
**From:** Jun Huang-LightHouse Global <jun.huang@lthouseglobal.com>
**Date:** 9/7/17 2:53 AM
**To:** "J. S. Yih" <jyih27@gmail.com>

Dr.,


Thank you so much, what I always said is that I am lucky enough so that I can meet you these outstanding guys at this age.
If possible and you'd like to, I'd like to introduce you who are in the same field to know each other, that might be a big brand storming occurring!
And, yes, heated..lol, and thanks for your open mind on the new arrangement!
I think I probably get the wrong wording..lol, "hot discussion" will be better? or how American describe the situation that many people talks about a person/issue very.....actively?
Sorry for stupid wording!!


cheers,
**Jun Huang   +886-975-892-572**
**jun.huang@lthouseglobal.com**
**Lighthouse Global Resource**
http://lighthouseglobal.com.sg


J. S. Yih <jyih27@gmail.com> 於 2017年9月5日 下午9:48 寫道:

Jun,  nice to hear that you are making good connections elsewhere.
It's fun to know that people were having "heated" discussions to place me "elsewhere."
No more joking, I am interested in Planning as well as IT, as long as I can make the most contributions.
The wait will be much greater than two weeks.  My friend.
--
Simon

4

Re: ¡iTSMC¡jInvitation for Skype interview with TSMC on 9/25(Mon...

**Subject:** Re: iiTSMCijInvitation for Skype interview with TSMC on 9/25(Mon) 2017US time_ Simon Yih 易繼實
**From:** Jun Huang-LightHouse Global <jun.huang@lthouseglobal.com>
**Date:** 9/26/17 10:37 PM
**To:** "J. S. Yih" <jyih27@gmail.com>
**CC:** Tammy Lee <tammy.lee@lighthouseglobal.com.sg>

Dr.,

Absolutely, you are exactly the one within, nothing more but all about respect.
And, as mentioned in last mail, that's my responsibility to take care of you both well in such a case starting from me, and I have no reason to run away from this since something happened, it's my duty and also why I need your understand about letting me handle this first, just give me a chance to do my duty well.

Dr., thank you so much for giving us the information about what happened in that meeting, and we are also working hard on this with TSMC HR. I'll let you know once any further.

all the best,
**Jun Huang  +886-975-892-572**
jun.huang@lthouseglobal.com
**Lighthouse Global Resource**
http://lighthouseglobal.com.sg

J. S. Yih <jyih27@gmail.com> 於 2017年9月27日 上午9:35 寫道:

Jun, the recordings of the two interviews are evidences.
The second one is priceless.

I could go thru my connections and complain to their CEOs.
I have no intention to make fools out of anyone, if I get an apology.
If they would like to invite me to Taiwan for a decent interview, I will consider.

Simon

On 9/26/17 9:24 PM, Jun Huang-LightHouse Global wrote:

Hello Dr.,

Good morning here, and good evening there!

Yes, I just got some information about what happened in that interview from Tammy, and absolutely, fully understand why you feel about that, I am sorry for any uncomfortable caused to you since that's me bridging up you both side.
I am clear without doubt that you establish good relationship and have many good friends in the career, however, as mentioned in last paragraph, this meeting starts from me and would you please hold on and let us figure out the whole picture and do our best to solve this first?
It's part of my responsibility, and should not use your relationship or any resource to do anything at this moment I think.
Sorry again for seeing this, Dr., and please kindly understand why I need your help to hold on.
Absolutely, your any idea is always welcomed!

cheers,
**Jun Huang  +886-975-892-572**
jun.huang@lthouseglobal.com
**Lighthouse Global Resource**
http://lighthouseglobal.com.sg

*5*

Re: ¡iTSMC¡jInvitation for Skype interview with TSMC on 9/25(Mon...

jyih27@gmail.com 於 2017年9月27日 上午2:03 寫道:

Tammy, it would be without merit for us to talk before they come up with a next story. Another two weeks, perhaps. But, if you insist, I will be on skype 9-10 pm tonight in NY. -- Simon

Sent from Yahoo Mail on Android

On Tue, Sep 26, 2017 at 10:34 AM, Tammy Lee
<tammy.lee@lighthouseglobal.com> wrote:

Hello Dr Simon,

Thank you for your email.

Perhaps I will give you a call tomorrow night if you are available?

Thank you and warmest regards
Tammy

 On 26 Sep 2017, at 10:15 PM, J. S. Yih <jyih27@yahoo.com> wrote:

Jun and Tammy,
Both of the IT Sr. Director and the HR Director were courteous and interested in my experiences.
After all, I did help establish and operate a team of 550+ top guns for the R&D of IBM's services business.

The CIO focused on his need to verify my job history by an IBM exec he can talk to and personal matters about my family.
From his tone, I doubt that it is his idea for me to work for him.

In any case, I am arranging TSMC's CC Wei's classmate in NCKU and Yale, the top most IBM exec in semiconductor R&D to speak for me. More than a month ago, I have also indicated that they can check with their own Sr. VP Mii, too.
I only found out recently, the husband of Irene Sun was also a good friend who gave me abundant guidance in my early years with IBM Research. Not sure any of these matters.

Simon

On 9/26/17 12:36 AM, Jun Huang-LightHouse Global wrote:

Hi Dr.,

I think the interview is finished now, am I right?
How about it? Things go as we wish?
Would you please kindly share with me how you feel about it? or let's have a brief discussion about it online?

cheers,

6

Re: Managers of JS Yih 易繼賓

**Subject:** Re: Managers of JS Yih 易繼賓
**From:** "J. S. Yih" <jyih27@gmail.com>
**Date:** 9/28/17 7:53 AM
**To:** willie_chang@tsmc.com
**CC:** Tammy Lee <tammy.lee@lighthouseglobal.com.sg>, Jun Huang-LightHouse Global <jun.huang@lthouseglobal.com>

Willie, hope email still works. I have contacted my old IBM boss Robert Morris, peer of TC Chen, both are available via LinkedIn to give reference.
TC has recently retired, and Robert is retiring from IBM Research, Global Labs by end of this month.
My friend Andrei Broder, was not a line manager at IBM, but he is famous in the search field for his engineering prowess, and he managed relationship with IBM S&D. I was under his technical guidance for a part of my eight years working with IBM Sales and Distribution.
If not too much trouble, please also copy Irene with my input to Dr. Tso.
Simon

On 9/28/17 12:07 AM, J. S. Yih wrote:

 Willie, per the request of Dr. Tso, here is a list of managers I have reported to, for his peruse.
Please also forward to Thomas and Terance.      Cheers, Simon

Robert JT Morris, for whom I was chief of staff (associate director), Services Research; including
      Brenda Dietrich (Business Analytics and Mathematical Sciences; moved to head IBM Data Science), 200+ out of Robert's 550+;
      Mahmoud Naghshineh (became GM, IBM Apple Relationship), for whom I led the services transformation for data centers after Robert moved on.

Andrei Broder (moved to Yahoo then Google), I led eight years in continuous improvement of IBM value chain program under his guidance. Andrei is a scion of Donald Knuth.

Chae An, Alfred Spector (moved to head Google Research), Chung-Sheng Li, David L Cohn, under their tenures, I managed the Commerce Architecture dept, led ww customer engagements for various commerce solutions, including the establishment of IBM Value Chain transformation and Common Commerce Engine. Alfred also put me to manage IBM Columbia U. Business School Relationship.

Stuart Feldman (moved to head Google East), who introduced me to e-commerce after my Denmark tour. Stu is one of the fathers of Unix. He is the one who

7

Re: Managers of JS Yih 易繼賣

created Make.

Laura Sanders, who picked me to Denmark and introduced me to banking, financials solutions, and years later IT system management.

Thomas Cofino, I was the system software and industry solutions lead for his RFID Project, a Lou Gerstner startup. My mentor since.

Re: ¡iTSMC¡jInvitation for Skype interview with TSMC on 9/25(Mon...

**Subject:** Re: iiTSMCijInvitation for Skype interview with TSMC on 9/25(Mon) 2017US time_ Simon Yih 易繼實
**From:** "J. S. Yih" <jyih27@gmail.com>
**Date:** 10/3/17 9:40 PM
**To:** Tammy Lee <tammy.lee@lighthouseglobal.com.sg>, 'Jun Huang-LightHouse Global' <jun.huang@lthouseglobal.com>

# BEING "OVERQUALIFIED" MAY BE A THIN EXCUSE FOR AGE DISCRIMINATION

## New York Age Discrimination Attorneys Work to Protect "Overqualified" Job Applicants

On 10/3/17 9:29 PM, Tammy Lee wrote:

Thank you for the information

-----Original Message-----
From: J. S. Yih [mailto:jyih27@gmail.com]
Sent: Wednesday, October 4, 2017 9:26 AM
To: Jun Huang-LightHouse Global <jun.huang@lthouseglobal.com>; Tammy Lee <tammy.lee@lighthouseglobal.com.sg>
Subject: Re: ¡iTSMC¡jInvitation for Skype interview with TSMC on 9/25(Mon) 2017US time_ Simon Yih 易繼實

US EEOC website:  https://www.eeoc.gov/
TSMC is a EEO company.
Look for "prohibited practices" in the web pages described as clear "evidence of intent to discriminate."
There are many witnesses and two skype calls for TSMC to review and clean up their practices.
I will wait for their apology by end of week this week.

9

為代當事人台灣積體電路製造股份有限公司發函澄清事（Clarifica...

**Subject:** 為代當事人台灣積體電路製造股份有限公司發函澄清事（Clarification of Matters on Behalf of our Client, Taiwan Semiconductor Manufacturing Company Limited）
**From:** bosenvon [馮博生] <bosenvon@leeandli.com>
**Date:** 10/13/17 11:08 AM
**To:** "'jyih27@gmail.com'" <jyih27@gmail.com>
**CC:** sharonwang [王妍] <sharonwang@leeandli.com>

*__URGENT & CONFIDENTIAL__*

易先生您好：
Dear Mr. Yih,

本所謹代表台灣積體電路製造股份有限公司（下稱「台積公司」），就您就2017年9月26日與台積電進行Skype面談所提出之主張，說明回覆如下。

On behalf of our client, Taiwan Semiconductor Manufacturing Company Limited ("TSMC"), we are writing in response to your statements regarding the Skype interview you attended with TSMC on September 26, 2017.

2017年7月31日，您經由獵人頭公司Lighthouse Global Resources Pte. Ltd（下稱「獵人頭公司」）投遞履歷應徵台積公司Corporate Planning Organization部門之Senior Business Analyst職位（下稱「CPO部門職缺」），經台積公司CPO主管檢視您的履歷後，認為不符合該CPO部門職缺需求，由台積公司招募人員另邀請您透過Skype 與台積公司IT部門主管（下稱「台積公司主管」）進行初步視訊面談（下稱「初步視訊面談」）。您於知悉前述情況後，同意接受該初步視訊面談。

On July 31, 2017, you applied for the position of Senior Business Analyst at TSMC's department of Corporate Planning Organization ("CPO Job Opening") through the headhunter, Lighthouse Global Resources Pte. Ltd ("Headhunter"). After the supervisor of TSMC CPO department reviewed your resume, the supervisor found that you did not meet the requirements of the CPO Job Opening. The hiring personnel of TSMC thus invited you to participate in a preliminary video interview through Skype ("Preliminary Video Interview ") with the supervisors from TSMC IT department ("TSMC Supervisors"). You acknowledged the foregoing results and accepted the invitation for the Preliminary Video Interview.

嗣您於2017年9月26日透過Skype與台積公司主管進行初步視訊面談，過程約進行 20至30分鐘，首先由台積公司主管詢問您於機器學習（Machine Learning）及大數據（Big Data）等專業領域之經驗，以及其他工作經驗，後接續詢問您過去之任職紀錄、現職之職掌以及離開IBM之原因，以及請您提供相關推薦人（reference） 名單，並嘗試瞭解您若欲回台任職需協助之相關事項，諸如目前您的夫人是否工作，以及子女之教育狀況等。

On September 26, 2017, you conducted the interview with the TSMC Supervisors through Skype. The Preliminary Video Interview lasted approximately 20 to 30 minutes. The TSMC Supervisors first asked you about your experience in the areas such as Machine Learning and Big Data, as well as other relevant work experience. The TSMC Supervisors then inquired about your past work experience, job description of your current position and the reasons for leaving IBM, and further requested you to provide a list of

10/24/17 10:01 PM

為代當事人台灣積體電路製造股份有限公司發函澄清事 (Clarifica...

persons for reference check. TSMC Supervisors intended to learn about any assistance you might need should you determines to work in Taiwan. and thus asked whether your wife was working and inquiring about your children's educational status.

初步視訊面談結束後，台積公司主管經討論，認為您不符合IT部門該職缺（下稱「職缺」）之需求，因此於2017年10月4日，台積公司透過獵人頭公司通知您不再進行後續正式面試程序，您表示不能接受，並透過獵人頭公司轉知台積公司如下之主張：
(1)您認為台積公司主管於初步視訊面談中，未關注您的專業技術能力，且於面談中花費較多時間詢問個人隱私及家人情況，包含您的夫人目前是否有工作以及子女目前教育狀況；
(2)您認為台積公司主管在詢問工作經歷之時，係以質疑、不信任之口吻質問，並認為受到人身攻擊。

After the Preliminary Video Interview, TSMC Supervisors conferred and decided that you did not meet the requirements of the IT department's job opening ("Job Opening "). On October 4, 2017, TSMC notified you through the Headhunter that no subsequent formal interview process would be conducted. You expressed that the result was unacceptable and notified TSMC of your statements below through the Headhunter:
(1) You claim that, during the Preliminary Video Interview, the TSMC Supervisors did not consider your technical expertise but instead spent more time on questions regarding your personal life and your family, including whether your wife was working and your children's educational status.
(2) You claim that TSMC Supervisors questioned you in a suspicious and distrustful tone, which made you feel that you were under personal attack.

關於您前述主張，謹說明、澄清如下：

We hereby provide further information and clarification in response to your foregoing statements as follows:

1.　經瞭解，台積公司主管於初步視訊面談中，從未使用任何質疑與不信任之口吻，亦未就您之回答作出任何評價、更無涉及人身攻擊，且主要關注詢問之問題，仍為您的專業技術能力，包括：您於機器學習 (Machine Learning) 及大數據 (Big Data) 等專業領域之經驗，以及其他工作經驗等，並請您說明過去之任職紀錄、現職之職掌以及離開IBM之原因，及請您提供推薦人 (reference) 名單等問題。然您就前述問題，回答均較模糊，且未於初步視訊面談中提供相關問題所涉之具體資訊以及推薦人 (reference) 名單，致台積公司主管無法依據相關資訊，評估您之工作經驗與工作能力是否符合該職缺之需求，因此經過討論後，不再進行後續正式面試程序。

Based on our understanding, throughout the Preliminary Video Interview, TSMC Supervisors neither spoke in suspicious and distrustful tone, nor provided any comments to your response, let alone made any personal attack. TSMC Supervisors had mainly inquired about your technical expertise such as your experience in Machine Learning and Big Data, as well as other relevant work experience. TSMC Supervisors also requested you to elaborate on your past work experience, job description of your current position and the reasons for leaving IBM, and further requested you to provide a list of persons for reference check. However, your responses to the foregoing inquiries are fairly vague. You also failed to provide specific information for the foregoing inquiries and a list of persons for reference check during the Preliminary Video

\\

10/24/17 10:01 PM

為代當事人台灣積體電路製造股份有限公司發函澄清事（Clarifica...

Interview. Under such circumstances, TSMC was unable to evaluate whether your work experience and expertise could meet the requirements of the Job Opening. As a result, TSMC Supervisors determined that no subsequent formal interview process would be conducted.

2. 至於您提到台積公司主管詢問您與家人之問題乙節，係因台積公司主管考量您旅居且有家庭在美國多年，為瞭解您若欲回台任職時，應如何協助您及家人解決回台定居時可能面對之問題，方於初步視訊面談時詢問您家人之情況，諸如：目前您的夫人是否工作以及子女之教育狀況等，此些問題均是基於台積公司瞭解應如何協助海外應徵者處理回台之問題，並無以此作為決定任用與否之依據，甚者，就您的個案情形，並無配偶或子女之因素，致有回台任職或定居之困難，然如前所述，台積公司是考量您之工作經驗與工作能力與該職缺之需求不符合，始決定不再進行後續正式面試程序，並無您所認為有因瞭解您及家人之況狀，而涉及任何就業歧視之情形。

The reason TSMC Supervisors asked questions regarding you and your family members is to learn about that, should you determine to work in Taiwan, how TSMC could assist you and your family on possible issues that might arise from your relocation to Taiwan, in considering that you and your families have stayed in the U.S for many years. Therefore, TSMC Supervisors asked questions regarding your family members, including whether your wife were working and inquiring about your children's educational status. The foregoing questions are raised to learn about how TSMC could assist overseas applicants to solve problems arising from relocating to Taiwan. The decision of recruitment had never been based on the response to such questions. Furthermore, in your case, you would not experience any difficulties in working in or relocating to Taiwan because of the status of your spouse or children. As mentioned in the preceding paragraph, your work experience and expertise fail to meet the requirements of the Job Opening, TSMC has thus determined that no subsequent formal interview process would be conducted. It is not the case, as you have claimed, that TSMC committed employment discrimination against you after learning about the status of you and your family.

3. 綜上所述，台積公司主管於前述初步視訊面談中，從未涉及任何人身攻擊以及就業歧視，若您未經台積公司同意前，擅自向媒體、公眾以及任何其他第三方散佈、揭露、傳播與台積公司之初步面談內容、影片、相關事項及資訊，或為任何不實陳述，致影響台積公司之商譽，台積公司將採取必要措施，以保障合法權益，並保留訴諸法律程序之一切權利。

In conclusion, throughout the Preliminary Video Interview, TSMC Supervisors had never committed any personal attack or employment discrimination against you. Should you disclose, disseminate or distribute to the media, the public and any other third parties, without TSMC's prior approval, any contents, video-recording, relevant matters and information in relation to the Preliminary Video Interview, or make any untruthful statement thereof, TSMC will take necessary measures to protect its legal rights and TSMC reserves its rights to pursue legal procedures.

說明、澄清如上，悉請查照。本函文係以中、英文作成，如有不一致時，應以中文為准。

Please take note of the foregoing information and clarification. This letter is made in both Chinese and English, and the Chinese version shall govern in case of discrepancy between these versions.

馮博生律師
理律法律事務所
新竹所

臺北所

12

10/24/17 10:01 PM

為代當事人台灣積體電路製造股份有限公司發函澄清事(Clarifica...

30075新竹科學工業園區
工業東二路1號5樓
電話:886-3-5799911分機211
傳真:886-3-5797880
電子郵件:bosenvon@leeandli.com
本所案號:T12073/M223

10508臺北市松山區
敦化北路201號7樓

13 / 13

10/24/17 10:01 PM

Case 7:18-cv-03844-CS Document 1 Filed 04/30/18 Page 26 of 37

WILLIAM D. FRUMKIN
ELIZABETH E. HUNTER

PARALEGAL
JANET M. HOWELL

# FH FRUMKIN & HUNTER LLP

WRITER'S EMAIL: wfrumkin@frumkinhunter.com

April 3, 2018

*Via Email and First Class Mail*
*Email: bosenvon@leeandli.com*
*Email: sharonwang@leeandli.com*
Bo-Sen Von, Esq.
Lee and Li, Attorneys-at-Law
Hsinchu Office
5F, 1 Industry E. 2nd Rd.
Hsinchu Science Park, 30075, Taiwan

Re:     *JihShyr Yih v. Taiwan Semiconductor Manufacturing Company*
        *Our File No. 18-8799*

Dear Mr. Von:

As you are aware, we have been retained by JihShyr Yih with respect to legal claims he has against Taiwan Semiconductor Manufacturing Company ("TSMC"). Based upon information provided to us by Mr. Yih, we have reason to believe that TSMC discriminated against him on the basis of his age, family status, and marital status, and retaliated against him in violation of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.*

We are in receipt of your March 22, 2018 email. For the reasons described below, we disagree with your statement that TSMC did not engage in discrimination. Moreover, the EEOC's Notice of Right to Sue is not binding or determinative of any issues in this case, especially given that the EEOC did not even consider any claims of family status or marital status discrimination under the NYSHRL.

*Mr. Yih's Employment History*

Dr. Yih has had a successful and extensive career in technology-based business process transformations. He worked for over twenty years at IBM as the Leader of Services for the Transformation Initiatives mission. At IBM, he established and operated a team of over 550 world-class engineers, mathematicians, and researchers for the Research & Development of IBM's Global Services business, and modernized IBM's Sales and Distribution value chain infrastructure. He received numerous achievement awards throughout his time at IBM, including Corporate Technical Recognition in 2012, a top honor shared by less than 200 IBM employees given for innovative

Bo-Sen Von, Esq.          - 2 -          April 3, 2018

technical contributions that resulted in over $100 million in revenue or $50 million in cost savings to IBM. Dr. Yih also transformed IBM Canada data centers business and operation models to cloud-based hosting and data services. Outside IBM, his work in e-commerce software has been prominently recognized by Gartner's Magic Quadrant as the top leader.

*Contact Between TSMC & Dr. Yih*

On or about July 14, 2017, Dr. Yih received an email from Jun Huang, a recruiter from Lighthouse Global Resources ("LGR") in Singapore. The email stated that Mr. Huang was working with TSMC to help them find "outstanding talent" to help them with predictive and analytical modeling in business operations. Mr. Huang stated that he thought that Dr. Yih was who he was looking for, and that he would like him to consider the opportunity with TSMC. Dr. Yih replied that he was interested and forwarded Mr. Huang a copy of his resume. They had a Skype video call to discuss the opportunity. Dr. Yih also spoke with Tammy Lee, TSMC's Account Manager at LGR, regarding the position on or about July 31, 2017.

Dr. Yih was originally scheduled to interview for a position as the Statistical/Predictive Modeling Architect/Leader of TSMC's Corporate Planning Organization. During one of their first conversations, Mr. Huang told Dr. Yih that all of the data scientists in the Corporate Planning Organization were young engineers, and that in his opinion, Dr. Yih could "level them up" with his expertise and worldwide customer experiences.

The job required him to be in constant communication with customers in the United States. Dr. Yih believed that it would be a remote position based out of TSMC's New York office or his home in New York.

Dr. Yih had an interview with TSMC on or about August 2, 2017 with Human Resources ("HR") managers Willie Chang and Claire Ying. During the interview, Dr. Yih discussed his background, experiences, achievements, and past awards. Mr. Chang asked Dr. Yih some questions concerning his marital status and family, such as "How many children do you have?" and "Does your wife work?" Dr. Yih answered these questions, but did not understand why they were relevant, so he asked, "Why are you asking this?" Mr. Chang responded that they wanted to know in case they had to relocate Dr. Yih at a later date. Overall, the interview lasted about eighty minutes.

After the interview, Dr. Yih spoke with Mr. Huang (the recruiter). He told Dr. Yih that the HR managers discussed Dr. Yih with Dr. Irene Sun, the Vice President of Corporate Planning. He stated that they said Dr. Yih's skills, experience, and knowledge made him a powerful candidate. Because of this, she said that other departments were also interested in hiring him for a more advanced position. She then told him that they decided to change the position he was interviewing for to a different position, under Chief Information Officer and Senior Vice President Doctor Stephen Tso, because he was overqualified for the previous position.

Bo-Sen Von, Esq.                           - 3 -                              April 3, 2018

Dr. Yih had a Skype interview on or about September 25, 2017 with Dr. Stephen Tso., HR Director Dr. Terance Chao, and IT Senior Director Thomas Chen. Dr. Yih started to explain his qualifications, but Dr. Tso interrupted him and started asking him questions. There were a few questions concerning why he left his previous position at IBM, and Dr. Tso requested references from Dr. Yih. Then, Dr. Tso moved on to questions concerning Dr. Yih's family. These questions included: "How many children do you have?"; "How old are your children?"; "What are your children doing now?"; "What future schools are your children going to attend?"; "Are you married?"; and "Does your wife work?" After Dr. Tso finished asking these questions, he abruptly stood up and left the video conference room. The interview only lasted about twenty minutes. Dr. Chao and Mr. Chen appeared to be ashamed and embarrassed by Dr. Tso's behavior. Shortly after, they too left the room holding their heads low.

Following the interview, Dr. Yih received an email from Mr. Huang, eager to hear how the interview went and expecting to hear good news. Dr. Yih replied to him (and copied Ms. Lee), stating that he felt offended by Dr. Tso's interrogating and inappropriate questions concerning his family.

Ms. Lee then spoke with TSMC about the interview. Mr. Huang emailed Dr. Yih back on or about September 26, 2017, stating that he understood why Dr. Yih felt uncomfortable with the interview. In a separate email later that night, Mr. Huang stated that he was working with TSMC's HR to figure out exactly what happened during the interview.

On or about September 28, 2017, Dr. Yih emailed Mr. Chang regarding the references that Dr. Tso requested and gave him the names of eleven references, all managers that he had reported to at IBM. He also asked Mr. Chang to forward the references to Dr. Chao and Mr. Chen. Upon information and belief, Dr. Tso failed to contact any of the references.

A few days later, on or about October 3, 2017, Ms. Lee called Dr. Yih, and informed him that he was being rejected from the position because he was too senior to fit in.

Dr. Yih felt extremely offended by this explanation, and sent an email to Mr. Huang and Ms. Lee explaining that he felt discriminated against. In response, Dr. Chao set up a call with Dr. Yih for October 5, 2017. During the call, Dr. Yih explained his concerns to Dr. Chao and Mr. Chang.

Then, on October 13, 2017, Dr. Yih received an email from your law firm, Lee and Li, attempting to explain the events surrounding Dr. Yih's interview on September 25, 2017. The email claimed that Dr. Yih was only given the second interview with Dr. Tso because the Corporate Planning Organization supervisor felt that Dr. Yih did not meet the requirements of the position with the Corporate Planning Organization. The email also claimed that the questions Dr. Tso asked concerning Dr. Yih's family were asked to determine whether Dr. Yih would need assistance if he decided to work in Taiwan. Then, the email stated that he was rejected from the position because he did not meet the job requirements.

Bo-Sen Von, Esq.                           - 4 -                              April 3, 2018

The email proceeded to respond to Dr. Yih's concerns regarding the interview. TSMC claimed that Dr. Yih was rejected due to the lack of detail he provided regarding his job at IBM, and his failure to provide references. Then, the email again explained how TSMC was apparently trying to assist him with relocating to Taiwan.

On October 30, 2017, Mr. Yih filed a charge of discrimination with the United States Equal Opportunity Commission, and a Notice of Right to Sue was issued on February 1, 2018, giving him until May 2, 2018 to file a lawsuit in federal court.

## Legal Claims

Based upon the above, it appears that TSMC has discriminated against Mr. Yih based upon his age, family status, and marital status, and retaliated against him in violation of the ADEA, 29 U.S.C. §§ 621 *et seq.*; Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.*; and the NYSHRL, N.Y. Executive Law §§ 290 *et seq.*

## Age Discrimination

The ADEA makes it unlawful for an employer "to fail or refuse to hire...any individual...because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination in a failure-to-hire case, a claimant must demonstrate that: 1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). To establish a prima facie inference of discrimination in his ADEA claim, a plaintiff may show that the person who was hired instead of him was significantly younger than him, *Springer v. City of New York*, 2006 U.S. Dist. LEXIS 8857, * 23-24 (E.D.N.Y. Mar. 3, 2006), citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996), or he may show that he was treated differently than other similarly situated employees who were younger. *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001). The law governing ADEA claims is identical to that governing claims made under NYSHRL. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010).

Here, Dr. Yih can establish a prima facie claim of age discrimination. First, Dr. Yih was 58 years of age when he interviewed with TSMC. *See* 29 U.S.C. § 631(a). Second, Dr. Yih was qualified for the position that he was interviewing for, as he had extensive experience in the field and successfully performed a similar position at IBM for over twenty years. He was also told that he was being sought out for the position because of his skills, knowledge, and experience. Third, TSMC failed to hire Dr. Yih. Fourth, while we are not aware of who was hired for the position, Dr. Yih was told that he was "too senior" to fit in. A plaintiff "is not required to show that [he] was replaced by someone outside of [his] protected class so long as [he] has presented some other evidence that gives rise to an inference of discrimination. *Morris v. New York City Dep't of Sanitation*, 2003 U.S. Dist. LEXIS 5146, at *5 (S.D.N.Y. 2003), *citing O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996).

Whether "too senior" meant that Dr. Yih was too old or overqualified, both meanings raise an inference of discrimination. *See Ferrell v. Leake & Watts Services, Inc.*, 83 Fed. Appx. 342 (2d Cir. 2003)(comment made by vice principal that teacher was "too old to be in the classroom" raises an inference of discrimination); *Taggart v. Time Inc.*, 924 F.2d 43 (2d Cir. 1991)(denying employment to an older job applicant because he has too much experience is simply a mask for the real reason that the applicant is too old); *E.E.O.C. v. District of Columbia, Dept. of Human Services*, 729 F.Supp. 907 (D.D.C. 1990) (overqualified and overspecialized are buzzwords for too old). Moreover, Dr. Yih need not even prove the above four factors because this statement is direct evidence of age discrimination. *See Owens v. New York City Hous. Auth.*, 1994 U.S. Dist. LEXIS 3348, *4-5 (S.D.N.Y. 1994).

In addition, the fact that Dr. Tso is a member of the protected class, does not preclude a claim of age discrimination. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1998)("The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003)(rejecting the idea that one member of a group is unlikely to discriminate against another member of the same group in the age discrimination context).

"[O]nce a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its action." *Terry*, 336 F.3d at 138. "[O]nce the defendant has made a showing of a neutral reason for the complained of action, to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.*

Here, there were multiple reasons given for not hiring Dr. Yih. Such inconsistent or post-hoc reason could be considered suspect and indicia of pretext. *See Sabree v. United Bd. Of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 404 (1st Cir. 1990) (post hoc rationalization of actions will not suffice to rebut plaintiff's prima facie case); *Belfi v. Prendergast*, 191 F.3d 129, 129 (2d Cir. 1999) ("Circumstantial evidence in the form of different and inconsistent explanations from the [employer] raise questions of fact to rebut its alleged non discriminatory reasons ... and may provide the jury with a basis to find pretext"). Unless a defendant articulates a legitimate non-discriminatory reason that actually motivated the decision, the reason is legally insufficient. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 248 (1989).

One reason given for not hiring Dr. Yih was that TSMC was unable to confirm his responsibilities while employed at IBM, and that he failed to provide references. This stated reasons is not credible for a number of reasons. Dr. Yih discussed his experiences and achievements while employed at IBM in detail during his first interview. Dr. Tso failed to ask Dr. Yih specifically about his experiences at IBM, and only asked about references that he may speak with. After the interview, Dr. Yih emailed an extensive list of references to TSMC. Dr. Tso failed to contact any of these references. A failure to contact references supports an inference of pretext, and suggests that Dr. Tso

Bo-Sen Von, Esq.                       - 6 -                       April 3, 2018

decided not to hire Dr. Yih during the interview. *Boyajian v. Starbucks.*587 F.Supp 2d 295 (D. Maine 2008). In addition, your law firm's email stated that he did not meed the job requirements. This puzzled Dr. Yih since Mr. Huang, who has worked with TSMC in the past, reached out to him regarding the original position. Additionally, LGR told him that he was being given an opportunity for a more advanced IT position with Dr. Tso because of his skills, experience, and knowledge, and mentioned nothing concerning his lack of qualifications. Additionally, during the interviews Dr. Yih went into detail concerning many of his achievements at IBM, and Dr. Tso failed to give him the opportunity to explain his qualifications during his interview.

### *Familial Status/Marital Status Discrimination*

Dr. Yih could also establish claims that TSMC discriminated against him based upon his family status and marital status, in violation of the NYSHRL. Employers are prohibited from engaging in discriminatory conduct, including refusing to hire an individual on the basis of familial status and marital status. *See* NYSHRL, N.Y. Exec. Law § 296; *Kipper v. Doron Precision Sys.*, 194 A.D.2d 855 (3d Dept. 1993) (employee established prima facie case of marital discrimination where supervisor stated that he was chosen for layoff because he was single and could withstand lack of work better from a financial standpoint).

Here, during the initial interview on August 2, 2017, Mr. Chang and Ms. Ying asked questions relating to his family and his marriage, including, "How many children do you have?" and "Does your wife work?". Additionally, when Dr. Yih interviewed with Dr. Tso on September 25, 2017, Dr. Tso asked several questions related to both Dr. Yih's marital status and familial status, and based his opinion of Dr. Yih on the answers to those questions. Specifically, Dr. Tso asked "How many children do you have?"; "How old are your children?"; "What are your children doing now?"; "What future schools are your children going to attend?"; "What is your marital status?"; and "Does your wife work?" When Dr. Tso did not approve of Dr. Yih's answers to these questions, he clearly became upset and left the interview room.

TSMC claimed that these questions were asked to determine whether Dr. Yih would be able to relocate to Taiwan. However, as admitted by your law firm in the letter to Dr. Yih, his answers did not have any effect on whether he would be able to relocate to Taiwan, and demonstrated to TSMC that he would not have any trouble. This obviously was not the reason for asking those questions, as Dr. Tso was still frustrated after learning the answers. As discussed above, Dr. Tso's abrupt ending of the interview after these questions shows that Dr. Tso decided not to hire Dr. Yih based on his answers at this interview.

### *Retaliation for Asserting Claims of Discrimination*

Dr. Yih can also establish claims for retaliation for his complaints of familial status and marital status discrimination. Employees are protected from adverse employment actions taken in retaliation for opposing or complaining about conduct that violates the NYSHRL. *See* N.Y. Exec. Law § 296. To prove a prima facie case of retaliation, a plaintiff must show "(1) participation in a

Bo-Sen Von, Esq.                              - 7 -                            April 3, 2018

protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995).

Here, Dr. Yih engaged in protected activity when he challenged Mr. Chang and Ms. Ying on August 2, 2017 about their questioning him about his marital and family status. He also engaged in protected activity when he complained to Mr. Huang and Ms. Lee about Dr. Tso's inappropriate line of questioning in an email shortly after the September 25, 2017 interview. A few days later, on or about October 5, 2017, Dr. Yih received news that he was being rejected from the position. The close timing between Dr. Yih's protected activity and the decision to reject him for the position raises an inference of retaliation. *See Manoharan v. Columbia U. Col. of Phys. & Surgeons*, 842 F. 2d 590, 593 (2d Cir. 1988)("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Based on the foregoing, Dr. Yih can establish claims that TSMC failed to hire him based upon his age, family status, and marital status, and retaliated against him in violation of the ADEA and NYSHRL. Under such claims, Dr. Yih may seek back pay, front pay, damages for emotional distress, liquidated or punitive damages, and attorney's fees and costs. Dr. Yih has been advised of his rights to pursue such claims by filing a lawsuit in federal court. Pursuant to his Notice of Right to Sue, he has until May 2, 2018 to do so. However, before taking any further action, Dr. Yih has requested that we contact you to determine if TSMC is interested in discussing an amicable resolution of these claims. If you would like to discuss an amicable resolution to this matter, please contact me. Due to the strict time limitations, if we do not receive a response by April 10, 2018, we will advise our client to proceed accordingly.

Very truly yours,

William D. Frumkin

WDF: mdn

cc:     Dr. JihShyr Yih (via email)

F:\APPLICAT\WP\Yih\L demand 4 3 18 FINAL.wpd

FW: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

**Subject:** FW: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company
**From:** Mike Nass <MNass@frumkinhunter.com>
**Date:** 4/17/18 10:23 AM
**To:** "J. Yih" <jyih@yahoo.com>

JihShyr,

Please see the below email from the other lawyer. We will set up a call to discuss soon.

Best, Mike

**From:** bosenvon [馮博生] [mailto:bosenvon@leeandli.com]
**Sent:** Monday, April 16, 2018 6:47 AM
**To:** William Frumkin <WFrumkin@frumkinhunter.com>
**Cc:** Janet Howell <jhowell@frumkinhunter.com>; Mike Nass <MNass@frumkinhunter.com>; Elizabeth Hunter <EHunter@frumkinhunter.com>; sharonwang [王妍] <sharonwang@leeandli.com>
**Subject:** RE: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

## *CONFIDENTIAL*

Dear Mr. Frumkin:

On behalf of our client, Taiwan Semiconductor Manufacturing Company ("TSMC"), we are writing in response to your April 3, 2018 letter (the "Letter"), which reached us on April 4, 2018, regarding the screening interviews that JihShyr Yih ("Dr. Yih") had with TSMC via Skype on August 3, 2017 and September 26, 2017. Please note that the dates stated in this response letter refer to Taiwan Time.

The Letter presented factual assertions regarding contact between TSMC, Lighthouse Global Resources ("LGR"), and Dr. Yih. Based on the factual assertions presented, you claimed that you have reason to believe that TSMC discriminated against Dr. Yih on the basis of age, family status, marital status and retaliated against him in violation of Age Discrimination in Employment Act and the New York State Human Rights Law.

We take this opportunity to correct certain factual assertions made in the Letter, and hope that upon TSMC's clarification of the facts you and your client will come to the conclusion that TSMC did not discriminate or retaliate against Dr. Yih in any way.

### Location of Dr. Yih's proposed position at TSMC

TSMC disputes the claim that it had considered Dr. Yih for a remote position based in New York.

In April 2017, TSMC requested the services of LGR to fill a "Data Scientist / Business Analyst" position under its Corporate Planning Organization ("CPO"). The specification for this position provided to LGR stated that its location would be in Hsinchu, Taiwan. On or about July 31, 2017, TSMC Human Resource manager Willie Chang received an email from Tammy Lee, a recruiter from LGR, proposing Dr. Yih for this role. Ms. Lee's email stated that Dr. Yih "is opened to relocate" and attached to it was a candidate report stating that Dr. Yih was "willing to get back to Taiwan to take this role."

FW: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

At no point in TSMC's communications with Dr. Yih did TSMC represent that his possible role with TSMC, in either the CPO or the IT functions, would be based out of TSMC's New York office or Dr. Yih's home in New York. Moreover, TSMC does not maintain an office in New York.

## Communications during the September 26, 2017 Interview

TSMC would like to correct certain facts regarding the preliminary video interview of Dr. Yih that was conducted on September 26, 2017 through Skype ("Preliminary Video Interview") with Senior Vice President and Chief Information Officer Stephen Tso, IT Senior Director Thomas Chen, and HR Director Terance Chao ("TSMC Supervisors").

TSMC disputes the claim that Dr. Tso ended the Preliminary Interview after becoming "frustrated" from Dr. Yih's answers regarding marital and family status. Dr. Tso was the last of the TSMC Supervisors to interview Dr. Yih. Dr. Tso began with questions about Dr. Yih's family to learn about any assistance he would need to relocate to Taiwan and to alert the candidate of any personal issues he would face with the relocation. (Mr. Chang had already explained TSMC's reasons for asking questions of this type during the August 3, 2017 Skype communication.) Dr. Yih answered these questions amicably and without objection, stating that he would have no issue relocating to Taiwan. According to our understanding, Dr. Tso then changed the topic of the discussion to Dr. Yih's qualifications, with specific questions focusing on Dr. Yih's experiences at IBM and the reasons why he left that company, at which point Dr. Yih became defensive and indirect in his answers. At the conclusion of the Preliminary Video Interview, Dr. Tso asked Dr. Yih to produce references from his time at IBM. Dr. Yih did not respond affirmatively to this request, but proposed that TSMC contact unrelated acquaintances, such as Dr. Yih's former university professors. Based on Dr. Yih's response to Dr. Tso's question, the TSMC Supervisors did not expect Dr. Yih to follow up with a list of IBM-related references.

TSMC disputes the claim that Dr. Tso or any of the other TSMC Supervisors left the video conference room while the Skype call was still underway. Instead, upon the conclusion of the Preliminary Video Interview, the TSMC Supervisors remained in the room to deliberate on Dr. Yih's candidacy and decided not to consider him further for the position at TSMC before leaving the room. This decision was based on Dr. Yih's unsatisfactory replies to the TSMC Supervisors' questions related to his experiences at IBM and the request to produce a list of IBM-related references.

When Dr. Yih subsequently sent a list of IBM-related references to Mr. Chang on September 28, the decision not to proceed further with Dr. Yih's candidacy had already been made by the TSMC Supervisors, and Mr. Chang no longer had reason to contact these references or further circulate the list within TSMC.

## Communicating the decision to reject Dr. Yih

When TSMC decides not to hire a candidate proposed by a headhunter firm such as LGR, the decision is typically conveyed by TSMC to the firm instead of directly to the candidate. It is also not TSMC's standard procedure to inform unsuccessful candidates of the decision immediately after the interview. In Dr. Yih's case, LGR was not informed of the TSMC Supervisors' decision until October 3, when Ms. Lee emailed Mr. Chang asking for an update and stating that she would proceed to "close the case" with Dr. Yih if he were not selected by TSMC. Mr. Chang replied that Ms. Lee could close the case.

At no point in the communications between TSMC and LGR did TSMC represent that Dr. Yih was rejected because he was "too senior" for the position. TSMC is not aware of the contents of the subsequent

FW: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

communication between Ms. Lee and Dr. Yih informing Dr. Yih of TSMC's decision. In attempting to match TSMC with suitable job candidates, LGR operates independently as a service provider for both the job provider and the job seeker. TSMC does not have supervision or control over LGR's operations and the communications LGR has with the candidates it proposes.

The Letter also mentioned that, subsequent to the August 3, 2017 communication with Mr. Chang and prior to the Preliminary Video Interview, LGR had told Dr. Yih that TSMC said that "Dr. Yih's skills, experience, and knowledge made him a powerful candidate." No one at TSMC made such statement to anyone, including to LGR, and as mentioned above TSMC has no control over the communications between LGR and the candidates it proposes.

As an employer, TSMC exercises the discretion to evaluate candidates for a variety of qualifications, such as the overall suitability for position, which may include technical expertise and management experience, as well as one's communication style. Here, the TSMC Supervisors felt that, when asked certain questions during the Preliminary Video Interview, Dr. Yih could not provide answers to those questions in a succinct and unambiguous manner. As a result, the TSMC Supervisors were unable to adequately understand the extent of Dr. Yih's accomplishments at IBM, and to effectively judge his capabilities. Therefore, the TSMC Supervisors having considered the totality of the circumstances, including Dr. Yih's performance during the Preliminary Video Interview, concluded that Dr. Yih had not sufficiently demonstrated his qualities and suitability for a management position at TSMC. As such, they decided it was not necessary to further invite him to additional in-person interviews in Taiwan.

In sum, we believe that Dr. Yih's alleged discrimination claims on the basis of age, family status, marital status and retaliation lack factual grounds, and we hope to have clarified certain misunderstandings to help you better evaluate these claims and advise Dr. Yih on whether to take further action.

Best regards,

Bo-Sen Von
Lee and Li, Attorneys-at-Law
Hsinchu Office
5F, 1 Industry E. 2nd Rd.
Hsinchu Science Park, 30075, Taiwan
Tel: 886-3-5799911 ext. 211
Fax: 886-3-5797880
E-mail: bosenvon@leeandli.com
Client/Matter No.: T12073/M223

Taipei Office
7F, 201 Tun Hua N. Road
Taipei 10508, Taiwan

From: William Frumkin [mailto:WFrumkin@frumkinhunter.com]
Sent: Friday, April 06, 2018 5:54 AM
To: bosenvon [馮博生]
Cc: Janet Howell; sharonwang [王妍]; Mike Nass; Elizabeth Hunter
Subject: Re: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

Thank you. We will look forward to your response. Regards, Bill Frumkin

FW: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

William D. Frumkin, Esq.
Frumkin & Hunter LLP
1025 Westchester Avenue, Suite 309
White Plains, New York 10604
wfrumkin@frumkinhunter.com
Tele.: 914-468-6096
Fax: 914-468-6099


Sent from my iPad

On Apr 5, 2018, at 12:45 PM, bosenvon [馮博生] <bosenvon@leeandli.com> wrote:

*CONFIDENTIAL*


Dear Mr. Frumkin,

We refer to your April 3, 2018 letter, which reached us on April 4, 2018.
We noted that you expected to receive our response before April 10. FYI, April 4 to 8 are national holidays in Taiwan. We will start to work on our response after the holidays and revert to you in due course.
Best regards,
Bo-Sen Von
Lee and Li, Attorneys-at-Law

Hsinchu Office
5F, 1 Industry E. 2nd Rd.
Hsinchu Science Park, 30075, Taiwan
Tel: 886-3-5799911 ext. 211
Fax: 886-3-5797880
E-mail: bosenvon@leeandli.com
Client/Matter No.: T12073/M223

Taipei Office
7F, 201 Tun Hua N. Road
Taipei 10508, Taiwan

寄件者: Janet Howell <jhowell@frumkinhunter.com>
寄件日期: 2018年4月4日 上午 06:25
收件者: bosenvon [馮博生]
主旨: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

**From:** Janet Howell
**Sent:** Tuesday, April 03, 2018 6:24 PM
**To:** 'bonsenvon@leeandli.com' <bonsenvon@leeandli.com>; 'sharonwang@leeandli.com' <sharonwang@leeandli.com>
**Subject:** JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

Mr. Von:

Please see attached.

FW: JihShyr Yih v. Taiwan Semiconductor Manufacturing Company

Best regards,

Janet M. Howell

Paralegal

Frumkin & Hunter LLP

1025 Westchester Avenue, Suite 309

White Plains, New York 10604

jhowell@frumkinhunter.com

Tele.: 914-468-6096, ext. 301

Fax: 914-468-6099

Orange County Office:

154 Main Street

Goshen, New York 10924

Tele.: 845-294-7620

Fax: 845-294-3075

*This e-mail is intended only for the persons or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please immediately notify us by calling us at (914) 468-6096.

Tax Advice Disclosure: To ensure compliance with requirements imposed by IRS Circular 230, we inform you that any federal tax advice contained in this communication was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.