UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JIHSHYR YIH,

                                  Plaintiff,

    - against -

TAIWAN SEMICONDUCTOR
MANUFACTURING COMPANY,

                                 Defendant.
------------------------------------------------------------x

**OPINION & ORDER**

No. 18-CV-3844 (CS)

Appearances:

JihShyr Yih
Yorktown Heights, New York
*Pro se Plaintiff*

Jessica Kastin
Erika D. Cagney
Jones Day
New York, New York
*Counsel for Defendant*

Seibel, J.

    Before the Court is the motion to dismiss of Defendant Taiwan Semiconductor Manufacturing Company ("TSMC"). (Doc. 14.)

## I.    BACKGROUND

###    A.    Parties

    Plaintiff JihShyr Yih is an Asian male of Chinese descent. (Doc. 13 ("AC") ¶ 1.) He is a United States citizen, has lived in the United States for thirty-six years, and currently lives in New York with his family. (*See id.* ¶¶ 1, 5.) Plaintiff holds a PhD from the University of Michigan – Ann Arbor in Computer Science and Engineering, and he wrote his doctoral thesis on "semiconductor self-repair design methodologies." (*Id.* ¶¶ 18, 21.) Plaintiff has "over 20

years in experience," including eight years at International Business Machines, ("IBM"), where he received "a highest order honor shared by fewer than 200 employees." (*Id.* ¶¶ 18-19.) He helped create the "IBM Thomas J. Watson Services Research, an organization of over 550 world-class researchers, engineers, and mathematicians," where he served as chief of staff. (*Id.* ¶ 20.)

Defendant TSMC is a multi-billion-dollar Taiwanese corporation headquartered in Hsinchu, Taiwan, with its principal place of business in Taiwan. (Doc. 16 ("Chao Decl.") ¶ 3; Doc. 19 ("Yih Decl.") ¶ 7.) Plaintiff alleges that TSMC has "numerous contacts with the United States," (AC ¶ 8), and prominent members of its leadership are American, including "the Chairman, a co-CEO, four out of ten [members of the] Board of Directors, and at least five executives [o]n the management team," (*id.* ¶ 10). Plaintiff further alleges "seven of [Defendant's] top ten shareholders are American," (*id.* ¶ 9), including "the largest major shareholder," the American Depository Receipt-TSMC, Ltd., ("ADR-TSMC"), which holds 20.6% of TSMC's shares, (Yih Decl. ¶ 2). According to Plaintiff, Citibank, which is "based in New York," controls ADR-TSMC. (*Id.* ¶ 3.) Defendant states that "ADR is not a dominant shareholder of TSMC stock" but is rather "an investment vehicle required for maintaining a listing on the [New York Stock Exchange ("NYSE")]." (Doc. 17 ("Hung Decl.") ¶ 5.)

In 2017, "approximately 0.003% of TSMC's total . . . revenue came from New York-based customers." (*Id.* ¶ 4.) Defendant also operates two "U.S.-based subsidiaries, *i.e.*, TSMC North America and WaferTech LLC." (Yih Decl. ¶ 7.) These subsidiaries produced $22 billion of the Defendant's $32 billion net revenue in 2017. (*Id.*) TSMC North America ("TSMC NA") and TSMC are "separate corporate entities," and TSMC NA is incorporated in California and has

its principal place of business there. (Chao Decl. ¶¶ 9-10.) Neither TSMC NA nor TSMC have offices in New York. (*Id*. ¶¶ 8, 12.)

Defendant has fifteen employees working in the United States on "limited-term overseas assignments," but none of them are in New York. (*Id.* ¶ 6.) Further, none of the TSMC employees in the United States work in the Business Operations Division or Information Technology ("IT") Division, as all of the Business Operations jobs are in Taiwan, and the IT employees are predominantly in Taiwan except for less than 1% based in China. (Doc. 18 ("Chang Decl.") ¶¶ 5, 11, 13.)

**B.      Facts**

On April 6, 2017, Defendant asked Lighthouse Global Resources ("LGR"), a Singapore-based recruiting firm, to fill a "Senior Business Intelligence Analyst" position in the "Business Operations Division under TSMC's Corporate Planning Organization." (Chang Decl. ¶ 4; *id.* Ex. A at 2-3.) The position specification in Defendant's request to LGR said the position was in Hsinchu. (*Id.* Ex. A at 3.) On July 14, 2017, Jun Huang, a recruiter at LGR "mainly taking care o[f] Taiwan activities," emailed Plaintiff about a job opportunity with TSMC. (Yih Decl. Ex. E at 15; *see* AC ¶ 22.)[1] In the email, Mr. Huang wrote:

> I am now helping a Taiwan leading corp. in semiconductor industry . . . look for an outstanding talent . . . .
>
> . . . I am thinking you might be the one I am looking for . . . .
>
> Would you please kindly let me know how you think on such an opportunity and get back to Taiwan for work?

---

[1] Doc. 19, or the "Yih Decl.," contains Plaintiff's declaration as well as multiple exhibits. Some of the exhibits, but not all, have their own pagination. Plaintiff, however, consecutively paginated all of Doc. 19, so for ease of reference, all citations to the exhibits of the "Yih Decl." will refer to the consecutive page numbers.

3

(Yih Decl. Ex. E at 15.) Plaintiff responded to the email seeking more information about the position, and Mr. Huang replied with a job description and a list of requirements and responsibilities. (*Id*. at 14-15.)[2]

Plaintiff states that when he was contacted by LGR, he "sought employment with Defendant [for a] job locat[ed] in New York" and alleges that neither the Defendant nor LGR "stipulate[d] job location as a requirement." (AC ¶¶ 14, 16.) After Plaintiff had discussions with LGR, an LGR recruiter emailed TSMC stating that Plaintiff was "open[] to relocat[ing]." (Chang Decl. Ex. B at 2.)

Following phone calls with Mr. Huang and Tammy Lee (another LGR employee), Plaintiff scheduled an interview with Defendant, to be conducted over Skype, for the position of "Statistical/Predictive Modeling Architect/Leader of the Corporate Planning Organization." (AC ¶¶ 22-23.) TSMC HR managers Wenwei Chang and Claire Yin conducted a "preliminary screening interview." (*Id*. ¶ 23; Chang Decl. ¶ 7.)[3] After Plaintiff told Mr. Chang and Ms. Yin about his "background, experiences, achievements, and past awards," Mr. Chang asked Plaintiff: "How many children do you have?" and "Does your wife work?" (AC ¶¶ 23-24.)

On September 5, 2017, Plaintiff received an email from Mr. Huang informing him that TSMC was interested in arranging an interview with Plaintiff for a different job, this one in the

---

[2] The list of responsibilities in the email was identical to the responsibilities set forth in Defendant's April 6, 2017 communication to LGR. Likewise, the April 6, 2017 communication listed four "[q]ualifications" – one of which was a job grade, another of which was a PhD, and two of which described the substantive experience needed – and the latter two were listed verbatim in Huang's email to Plaintiff. (*Compare* Chang Decl. Ex. A at 3, *with* Yih Decl. Ex. E at 14.)

[3] Plaintiff identifies TSMC's HR managers as "Willie Chang" and "Claire Ying," (AC ¶ 23), but based on Defendant's submissions, their names are "Wenwei Chang" and "Claire Yin," (Chang Decl. at 1; *id*. ¶ 7).

4

IT department. (Yih Decl. Ex. H at 22). On September 25, 2017, Plaintiff had a second Skype interview, and it, like the first, began with a discussion of Plaintiff's qualifications and experience. (AC ¶¶ 27-30.) But again Defendant's representatives asked Plaintiff a series of "family related questions," including: "'How many children do you have?'; 'How old are your children?'; 'What are your children doing now?'; 'What future schools are your children going to attend?'; 'Are you married?'; and 'Does your wife work?'" (*Id*. ¶¶ 32-33.) The interview ended "without any job qualifying questions." (*Id*. ¶¶ 35-36.)

Following the interview, Plaintiff emailed the LGR recruiters expressing his discontent with Defendant's "interrogating and inappropriate questions concerning his family." (*Id*. ¶ 37.) Mr. Huang informed Plaintiff that he had contacted Defendant's HR department to report the issue. (*Id*. ¶ 39.)

On or about October 3, 2017, Ms. Lee informed Plaintiff that Defendant did not offer him a job. (*Id*. ¶ 41.) Ms. Lee allegedly told Plaintiff that "he was too senior to fit in." (*Id*.) On or about October 5, 2017, Plaintiff spoke on the phone with the HR Director of TSMC, and Plaintiff said that he felt he had been discriminated against. (*Id.* ¶ 42; *see id* ¶ 41.) On October 13, 2017, Plaintiff received an email from Defendant's attorney, explaining that the "reason [Defendant] asked questions regarding [Plaintiff] and [Plaintiff's] family members is to learn about that, should [Plaintiff] determine to work in Taiwan" so that Defendant "could assist [Plaintiff] and [his] family on possible issues that might arise from [their] relocation to Taiwan . . . considering [Plaintiff] and [his] famil[y] have stayed in the U.S. for many years." (Chang Decl. Ex. C at 2, 4.) The email also stated that Plaintiff was not chosen for the position because of his vague, unspecific answers to questions about his experience and his failure to provide references, (*id.* at 3), even though Plaintiff alleges he emailed references to Defendant three days after the

5

interview, (AC ¶¶ 40, 45). Defendant's counsel also warned that "TSMC reserve[d] its rights to pursue legal procedures" should Plaintiff "disclose, disseminate or distribute to the media, the public and any other third parties" information related to the interview without the Defendant's prior approval, or make any untruthful statements about the process. (Chang Decl. Ex. C at 4.)

Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on October 30, 2017. (*See* AC ¶ 3.) He received a Notice of Right to Sue from the EEOC on February 5, 2018. (*Id.*)

### C.     **Procedural History**

Plaintiff filed his *pro se* Complaint on April 30, 2018, (Doc. 1), and on June 5, 2018, Defendant sent a letter to the Court requesting a pre-motion conference in anticipation of its motion to dismiss, (Doc. 8). On July 2, 2018, the Court held a pre-motion conference and granted Plaintiff leave to amend. (Minute Entry dated July 2, 2018.) Plaintiff filed his AC on August 1, 2018, bringing the following claims: (1) discrimination on the basis of sex and national origin under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*; (2) discrimination on the basis of age under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*; and (3) discrimination under the New York State Human Rights Law. (AC at 3-4.) Plaintiff seeks $167.23 million in back pay and front pay, and an unspecified amount for emotional distress and punitive damages. (*Id.* at 6.) On September 6, 2018, Defendant filed a motion to dismiss the AC, (Doc. 14), and a memorandum of law in support of its motion, (Doc. 15 ("D's Mem.")). Plaintiff opposed Defendant's motion, (Doc. 20 ("P's Opp.")), and Defendant filed a reply, (Doc. 21 ("D's Reply")).

## II. LEGAL STANDARD

### A. *Pro Se* Complaints

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted);[4] *see Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) (*pro se* pleadings construed liberally on 12(b)(2) motion), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted).

### B. Rule 12(b)(2)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has [personal] jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). "[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd*, 882 F.3d 333 (2d Cir. 2018). "[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted). Ambiguities in the pleadings should be resolved

---

[4] The Court will send to Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

7

in the plaintiff's favor, but "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (internal quotation marks omitted). "Moreover, resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." *SPV OSUS Ltd.*, 114 F. Supp. 3d at 167.

## III. DISCUSSION

### A. Personal Jurisdiction[5]

A federal court sitting in diversity looks to the law of the state in which it sits to ascertain whether it may exercise personal jurisdiction over a foreign defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). Accordingly, the Court must first determine whether New York law would confer upon its courts the jurisdiction to reach the defendant, under a theory of either general jurisdiction pursuant to N.Y. C.P.L.R. § 301 or specific jurisdiction under N.Y. C.P.L.R. § 302. *See Bank Brussels Lambert*, 305 F.3d at 124; *Vasquez v. H.K. & Shanghai Banking Corp.*, No. 18-CV-1876, 2019 WL 2327810, at *7-8 (S.D.N.Y. May 30, 2019). "If there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert*, 305 F.3d at 124.

---

[5] Before ruling on the merits of a case, the Court must first determine whether it has jurisdiction over the parties. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). Accordingly, I must address personal jurisdiction first even though Defendant also moved to dismiss the AC for failure to state a claim.

8

### 1. General Jurisdiction

A defendant-corporation is subject to general jurisdiction in New York if it "'has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted.'" *Vasquez*, 2019 WL 2327810, at *7 (alteration in original) (quoting *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014)). Such an exercise of jurisdiction comports with due process if the corporation's "affiliations with the State . . . render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The Court has general jurisdiction over a company that is incorporated or has its principal place of business in New York, *see Magdalena v. Lins*, 999 N.Y.S.2d 44, 45 (2014), but because TSMC is incorporated in Taiwan and has its principal place of business there, (Chao Decl. ¶3 (TSCM is a Taiwanese corporation with its principal place of business in Taiwan)), general jurisdiction cannot be found on those grounds, *see Vasquez*, 2019 WL 2327810, at *7; *Magdalena*, 999 N.Y.S.2d at 45. But a corporate defendant's state of incorporation or principal place of business are not the only means by which a corporation can be found to be "doing business" in New York. *See Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 07-CV-11202, 2008 WL 2971775, at *5 (S.D.N.Y. July 31, 2008), *appeal dismissed*, 316 F. App'x 990 (2d Cir. 2008). "At its core, the standard for determining whether a defendant is doing business in New York boils down to 'presence.'" *Id.* (quoting *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 567 (S.D.N.Y. 2006), *aff'd*, 277 F. App'x 92 (2d Cir. 2008) (summary order)). Factors that courts consider in determining a defendant's presence in the state include, among other things, "the existence of an office in New York; the solicitation of business in the state; the

9

presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Id.* (internal quotation marks omitted).

Most of the aforementioned factors suggest that Defendant does not have a "presence" in New York. Plaintiff has not alleged that Defendant has any offices, bank accounts, or property in New York, nor has Plaintiff alleged that any of Defendant's employees work in New York – and Defendant has said they do not. (*See* Chao Decl. ¶ 6-8.) Other than stating that he believes he could have worked for Defendant in New York had he gotten the job, Plaintiff has not indicated that Defendant employs a single individual in New York.

Plaintiff instead premises his theory of general jurisdiction on his allegation that Defendant solicits business within the state. (P's Opp. at 2-3.) But to permit jurisdiction, solicitation must be substantial and continuous, and the defendant must engage in other activities of substance in the state. *Overseas Media, Inc.*, 407 F. Supp. 2d at 569. Defendant's representative attested to the fact that TSMC does not actively solicit business in New York, and only a miniscule amount of its business comes from New York. (Hung Decl. ¶ 4.) For example, only 0.003% of its total 2017 revenue came from New York-based customers. (*Id.*) Plaintiff does not dispute this figure but contends that it is misleading because 0.003% of Defendant's multi-billion-dollar operation means Defendant is transacting about $1 million in business with customers in New York. (P's Opp. at 2-3.) But transacting business is not the same as soliciting business. Plaintiff presents no evidence of any solicitation, let alone solicitation that is substantial and continuous. In any event, assuming sales are a fair proxy for solicitation, $1 million in sales could in some cases be sufficient to establish a defendant's presence in New York, but not here. "Courts will frequently look to the percentage of a company's revenue attributable to New York business in determining whether solicitation is substantial and

continuous." *Overseas Media, Inc.*, 407 F. Supp. 2d at 569. And "[w]hen less than 5% of a company's revenue [is attributable] to its business in the forum state, general jurisdiction is normally denied." *Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*, No. 05-CV-2744, 2007 WL 3378256, at *3 n.4 (S.D.N.Y. Nov. 9, 2007); *see Overseas Media, Inc.*, 407 F. Supp. 2d at 569 (collecting cases). Accordingly, while Defendant did some business in New York, it was not sufficient to consider Defendant to be "present" in the state for the purpose of general jurisdiction.

Plaintiff further argues that Defendant is subject to general jurisdiction in New York because its largest shareholder is a New York company. (P's Opp. at 1-2). ADR-TSMC holds 20.6% of TSMC's shares. (AC ¶ 9; Yih Decl. ¶ 2.) But Defendant contends that "ADR[-TMSC] is not a dominant shareholder of TSMC stock" but is rather "an investment vehicle required for maintaining a listing on the NYSE." (Hung Decl. ¶ 5). Plaintiff, in his opposition, seemingly concedes as much, stating that "[a]n American Depositary Receipt ('ADR') is an investment vehicle, by which a U.S. bank owns a foreign company's shares and in turn issues certificates to trade on a U.S. exchange." (P's Opp. at 1.) Plaintiff, however, argues that because Citibank, which is based in New York (an assertion he does not support), controls ADR-TMSC, Citibank and ADR-TMSC's New York presence should be imputed to Defendant. (*See id.* at 2.) But "'the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take steps necessary to facilitate those listings (such as . . . designating a *depository* for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences.'" *Ziegler, Ziegler & Assocs. LLP v. China Dig. Media Corp.*, No. 05-CV-4960, 2010 WL 2835567, at *4 (S.D.N.Y. July 13, 2010) (emphasis added) (quoting *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 97 (2d Cir. 2000)). I

11

therefore do not have personal jurisdiction over Defendant based on its designation of a depository – ADR-TSMC – in New York. And, even if ADR-TSMC was not merely a depository, "[t]he fact that a corporation has minority shareholders in a jurisdiction in no way indicates that it is engaged in continuous and systematic business in that jurisdiction." *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, No. 01-CV-7342, 2003 WL 1807148, at *6 n.12 (S.D.N.Y. Apr. 4, 2003), *certification denied*, 2005 WL 1523508 (S.D.N.Y. June 27, 2005).

Accordingly, Defendant is not subject to general jurisdiction in New York.

### 2. Specific Jurisdiction

A finding of specific jurisdiction under N.Y. C.P.L.R § 302(a)(1) requires the Court to determine that "the defendant 'purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" *In re Terrorist Attacks on Sept. 11, 2001*, 440 F. Supp. 2d 281, 284 (S.D.N.Y. 2006) (alteration in original) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985)).[6] "The overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (alterations and internal quotation marks omitted). "Although it is impossible to precisely fix those acts that constitute a transaction of business, . . . it is the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). This emphasis on "a certain quality, rather than a specific quantity, of contacts with the forum," *U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993), means that "proof of

---

[6] The parties do not suggest that any other section of N.Y. C.P.L.R § 302 would be applicable.

one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (internal quotation marks omitted).

Plaintiff argues that the Court has specific jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1) because "TSMC recruits new employees in New York and Plaintiff's employment discrimination clams arise from this business activity." (P's Opp. at 8.) Plaintiff has failed to allege, however, that Defendant engaged in any recruitment activity in New York other than the contact Defendant had with Plaintiff. While Plaintiff alleges that Defendant has hired three of Plaintiff's former IBM colleagues, (AC ¶ 50), Plaintiff provides nothing regarding how, or if, those employees were recruited by Defendant, let alone whether such recruitment took place in New York. But because section 302(1)(a) is a "single act statute," *Deutsche Bank Sec.*, 7 N.Y.3d at 71 (internal quotation marks omitted), I must analyze whether Defendant's contacts with Plaintiff are alone sufficient to establish that Defendant transacted business within New York.

Plaintiff alleges that Defendant and LGR contacted him about a potential job opportunity via five emails, two phone calls, and two Skype calls. (*See* AC ¶¶ 22-47.)[7] But "limited electronic or telephonic communication between an out-of-state Defendant and a New York Plaintiff regarding services to be performed *outside of New York*, without more, will not justify long-arm jurisdiction under § 302(a)(1)'s 'transacts business' clause." *Beem v. Noble Grp. Ltd.*, No. 14-CV-9046, 2015 WL 8781333, at *4 (S.D.N.Y. Dec. 14, 2015) (emphasis added); *see*

---

[7] I will assume that all of these contacts may be considered even though several of them were with LGR, not Defendant.

*Lipson v. Birch*, 46 F. Supp. 3d 206, 218 (E.D.N.Y. 2014) ("[L]etters and calls to New York to perform non-New York services do not support personal jurisdiction under Section 302(a)(1) against non-resident defendants.") (internal quotation marks omitted). Thus, the relevant inquiry is whether Defendant contacted Plaintiff regarding services to be performed in New York.

Plaintiff asserts that he "sought employment with Defendant [for a] job locat[ed] in New York, for at least a period of time before considering any relocation," (AC ¶ 16), and because the job description he received did not specify where he would have to work, it was reasonable to expect remote employment in New York, (*see* P's Opp. at 4-5). Even if that was Plaintiff's mindset, it was not Defendant's. The position specification Defendant sent LGR – other portions of which LGR pasted into an email to Plaintiff – stated that the job was in Hsinchu. (*See* Chang Decl. Ex. A at 3; Yih Decl. Ex. E at 14.) Plaintiff's subjective belief cannot create jurisdiction. Further, it is hard to see how Plaintiff could reasonably have believed he could work in New York. The first email Plaintiff received from a recruiter at LGR, who said he handles "mainly . . . Taiwan activities," asked whether Plaintiff would "please kindly let me know how you think on such an opportunity and get back to Taiwan for work?" (Yih Decl. Ex. E at 15.) This language strongly suggests that the position offered was in Taiwan, and merely because a later posting did not list any location does not plausibly support Plaintiff's position that the employment opportunity was in New York.

Defendant has also submitted declarations and affidavits confirming that it has no employees in New York, (Chao Decl. ¶¶ 6, 8), and that all of its employees within the Business Operations Division and the IT Division (the two divisions for which Plaintiff interviewed) work in Taiwan or China, (Chang Decl. ¶¶ 5, 11, 13). Plaintiff tries to refute this evidence, in part, by saying that it is common for people in Plaintiff's industry to work remotely, that he received

14

many "outstanding . . . awards" in his previous employment, and that TSMC derives the majority of its revenue from the United States. (P's Opp. at 6.) But none of those allegations refute Defendant's assertion that it has no employees in New York, working remotely or otherwise. And while I must at this stage "accept[] uncontroverted allegations as true and resolv[e] controverted facts and doubts in plaintiff's favor," *Am. Para Prof'l Sys., Inc. v. LabOne, Inc.*, 175 F. Supp. 2d 450, 455 (E.D.N.Y. 2001), I am also free to consider Defendant's affidavits, *see SPV OSUS Ltd.*, 114 F. Supp. 3d at 167, and Plaintiff has failed to allege any facts that controvert Defendant's affidavits that establish that no TSMC employees work remotely in New York and that no employees in the divisions in which Plaintiff sought employment work outside of Taiwan and China.

Plaintiff's other arguments are equally unavailing. Plaintiff tries to controvert Defendant's assertion that it has no employees in New York by stating that Defendant has employees working in the United States. (P's Opp. at 6 (citing Chao Decl. ¶ 6).) But those fifteen assignments are "limited-term overseas assignments," and, more significantly, none of them are in New York. (Chao Decl. ¶ 6.) Plaintiff next asserts that Defendant's declarant who attested to the fact that the job was not in New York does not have the competency to testify to that fact. (P's Opp. at 3, 6.) That assertion is easily rejected, as Plaintiff has offered nothing but a conclusory assertion that the declarant would not be competent to testify on this issue, while the declarant has attested to the fact that he is a Manager in TSMC's Recruiting department. (Chang Decl. ¶¶ 1-2.)

Plaintiff further argues that an email from an LGR recruiter to TSMC stating that Plaintiff "is "open[] to relocat[ing]," (*id*. Ex. B at 2), and an email that Plaintiff received from Defendant's counsel after his job interviews stating that certain questions were asked during the

15

interviews to help Defendant assist Plaintiff "should [he] determine to work in Taiwan," (*id.* Ex. C at 4), both show that it was up to Plaintiff whether he would relocate, (P's Opp. at 5-6). These are not reasonable interpretations of the emails. In the first, LGR was pitching Plaintiff to Defendant as a candidate and assuring Defendant that Plaintiff was willing to move to Taiwan if offered the job. In the second, Defendant was discussing the assistance Plaintiff and his family might need if he had moved to Taiwan for the job. Neither suggest Defendant understood or agreed that Plaintiff would work in New York. Any potential ambiguity Plaintiff reads into the emails cannot create a factual dispute as to whether Defendant was offering a New York-based job, where the record is clear that TSMC did not actually have any jobs in New York or any employees working remotely in New York. And to the extent Plaintiff argues that these emails reasonably misled him into thinking he had the option to work remotely, one was dated after the interviews, (*see* Chang Decl. Ex. C at 2), and the other was an email between TSMC and LGR, (*id.* Ex. B at 2), and Plaintiff has not alleged that he saw the email prior to his interviews.

Ultimately then, this is an instance where an out-of-state Defendant sent communications into New York to solicit Plaintiff to perform "non-New York services," which "do[es] not support personal jurisdiction under Section 302(a)(1)." *Lipson*, 46 F. Supp. 3d at 218 (internal quotation marks omitted); *see Beem*, 2015 WL 8781333, at *4; *see also Deufrains v. Karcauskas*, No. 12-CV-2576, 2013 WL 4806955, at *10 (E.D.N.Y. Sept. 9, 2013) (telephone and Skype calls made to New York plaintiff did not confer jurisdiction over defendant where center of gravity for contacts was outside of New York); *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995) ("Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are

insufficient to establish personal jurisdiction."), *aff'd*, 201 F.3d 431 (2d Cir. 1999). Accordingly, this Court cannot exercise specific jurisdiction over Defendant under section 302(a)(1).

* * *

Because Plaintiff has failed to make a *prima facie* showing of jurisdiction under New York law, I need not decide whether exercising jurisdiction over Defendant would comport with the Due Process Clause of the Fourteenth Amendment, but it seems unlikely that Defendant would have sufficient minimum contacts with the forum. Further, I need not, and in fact cannot, decide the instant motion on the merits (although at least some of Defendant's arguments seem well taken) because I lack jurisdiction over Defendant. *See Doe v. Del. State Police*, 939 F. Supp. 2d 313, 320 (S.D.N.Y. 2013).

### B. <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . .'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after receiving Defendant's pre-motion letter, (Doc. 8), and having the benefit of the Court's observations during a pre-motion conference, (Minute Entry dated July 2, 2018). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.

17

*See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not asked for leave to amend or suggested that he possesses additional facts that could remedy the deficiencies in his amended complaint. Plaintiff has submitted additional facts in connection with the motion and still has not met his burden. Indeed, the problem here is not one that better pleading could cure. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, the Court declines to grant leave to amend *sua sponte*. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted); *TechnoMarine SA v.*

*Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made."); *id.* (proper to dismiss with prejudice where no indication plaintiff could or would provide additional allegations leading to different result); *Jones v. Warren*, No. 12-CV-5346, 2013 WL 3439969, at *4 (E.D.N.Y. July 9, 2013) (amendment futile where facts conclusively show lack of personal jurisdiction).

## IV.     CONCLUSION

Based on the foregoing, Defendant's motion to dismiss is GRANTED for lack of personal jurisdiction. To the extent that Plaintiff seeks oral argument, that request is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 14), close the case, and mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: June 24, 2019
          White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.